IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LASHAWN CABALLERO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:23-cv-1837-K-BN |
| | § | |
| GATEWAY MORTGAGE, a Division | § | |
| of Gateway First Bank, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and an order of reference from United States District Judge Ed Kinkeade. *See* Dkt. No. 2.

Plaintiff Lashawn Caballero filed a Motion Requesting Leave for Pleading Amendment of Original Petition ("Motion to Amend"). *See* Dkt. No. 32. In response to the Court's order, Ms. Caballero filed her proposed amended complaint as a Supplement to her Motion to Amend ("Proposed Amended Complaint"). *See* Dkt. Nos. 33 & 34. Ms. Caballero then filed a Motion for Leave to Request Joinder of Defendants ("Motion for Joinder"). *See* Dkt. No. 35.

Defendant Gateway Mortgage, a division of Gateway First Bank, ("Gateway Mortgage") filed a response to the Motion to Amend, *see* Dkt. No. 36, and Ms. Caballero filed a reply, *see* Dkt. No. 38.

-1-

Gateway Mortgage also filed a response to the Motion for Joinder, *see* Dkt. No. 37, and Ms. Caballero did not file a reply.

Ms. Caballero then filed a Supplement to Original Complaint that is identical to the proposed amended complaint that she previously filed. *See* Dkt. Nos. 34 & 39. And Ms. Caballero also filed a Motion Requesting Status Update on Motion for Leave of Joinder to Add Additional Defendants and Motion Requesting Status Update on Leave Request to Amended Original Complaint, *see* Dkt. No. 43, and a Motion for Leave to Seek Discovery Related to Unpleaded Claims and Non-Parties, *see* Dkt. No. 45.

For the reasons and to the extent explained below, the Court should grant in part and deny in part Ms. Caballero's Motion to Amend [Dkt. No. 32] and Motion to Join Defendants [Dkt. No. 35] and deny Ms. Caballero's Motion for Discovery [Dkt. No. 45] and deny as moot Ms. Caballero's Motion Requesting Status Update on Motion for Leave of Joinder to Add Additional Defendants and Motion Requesting Status Update on Leave Request to Amended Original Complaint [Dkt. No. 43], and, once the Court has granted in part Ms. Caballero's Motion to Amend and joined the non-diverse defendants, the Court should remand this case to state court.

## Background

This case concerns a mortgage and foreclosure. Lender Gateway Mortgage foreclosed on borrower Lashawn Caballero's residence at 1053 Spofford Drive, Forney, Texas 75126. *See* Dkt. No. 1-5 at 2.

Ms. Caballero filed suit in state court seeking declaratory judgment to declare the foreclosure null and void and trespass to try title. *See id.* at 3.

Gateway Mortgage removed the case to federal court on the basis of diversity jurisdiction. *See* Dkt. No. 1 at 2.

Ms. Caballero was formerly represented by Paul R. Leake of the Law Office of Paul R. Leake.

But Paul R. Leake had to withdraw as counsel and close his practice. *See* Dkt. No. 24.

Ms. Caballero is currently unrepresented by counsel.

## Legal Standards and Analysis

I.    <u>Motion to Amend or Add Claims against Gateway Mortgage</u>

The undersigned will first address Ms. Caballero's request to add or amend claims against Gateway Mortgage.

A. <u>Legal Standards</u>

When, as here, the party is not subject to an expired deadline for seeking leave to amend, Federal Rule of Civil Procedure 15(a) requires that leave to amend be granted freely "when justice so requires." FED. R. CIV. P. 15(a)(2). Leave to amend is not automatic, *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005), but the federal rules' policy "is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading," *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981).

The Court "may consider a variety of factors" when deciding whether to grant leave to amend, "including undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment." *Jones*, 427 F.3d at 994. But Rule 15(a) provides a "strong presumption in favor of granting leave to amend," *Fin. Acquisition Partners, LP v. Blackwell*, 440 F.3d 278, 291 (5th Cir. 2006), and the Court must do so "unless there is a substantial reason to deny leave to amend," *Dussouy*, 660 F.2d at 598; *accord Jebaco Inc. v. Harrah's Operating Co. Inc.*, 587 F.3d 314, 322 (5th Cir. 2009) ("leave to amend is to be granted liberally unless the movant has acted in bad faith or with a dilatory motive, granting the motion would cause prejudice, or amendment would be futile").

"A court may therefore 'refuse leave to amend if … the complaint as amended would be subject to dismissal.'" *Petty v. Great W. Cas. Co.*, No. 3:17-cv-2526-S-BN, 2018 WL 6252550, at *2 (N.D. Tex. Oct. 10, 2018) (quoting *Varela v. Gonzales*, 773 F.3d 704, 707 (5th Cir. 2014) (quotation marks omitted); *see also Legate v. Livingston*, 822 F.3d 207, 211 (5th Cir. 2016) (While "the language of [Rule 15(a)] 'evinces a bias in favor of granting leave to amend,'…a district court need not grant a futile motion to amend.") (quoting *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002) (quoting *Chitimacha Tribe of La. v. Harry L. Laws Co.*, 283 F.2d 1157, 1162 (5th Cir. 1982) (citation omitted); *cf. Stem v. Gomez*, 813 F.3d 205, 215-16 (5th Cir. 2016) ("When an amended complaint would still 'fail to survive

a Rule 12(b)(6) motion,' it is not an abuse of discretion to deny the motion'" for leave to amend.) (quoting *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014)).

The Court's futility analysis parallels an analysis of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

And, "[u]nder that standard, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.' [And a] claim is facially plausible if the complaint 'allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged.'" *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590 (5th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (in turn quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007); internal quotation marks omitted); *see also Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) ("per curiam) ("[T]o survive a motion to dismiss" under *Twombly* and *Iqbal*, a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that a plaintiff contends entitle him to relief.) (citing Fed. R. Civ. P. 8(a)(2)-(3), (d)(1), (e)); *accord N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 191 (5th Cir. 2015) ("[T]o survive a Rule 12(b)(6) motion to dismiss, the complaint does not need detailed factual allegations, but it must provide the plaintiff's grounds for entitlement to relief—including factual allegations that, when assumed to be true, raise a right to relief above the speculative level.") (footnote and internal quotation marks omitted).

The United States Supreme Court "has made clear that a Rule 12(b)(6) motion turns on the sufficiency of the 'factual allegations' in the complaint." *Smith v. Bank of Am., N.A.,* 615 F. App'x 830, 833 (5th Cir. 2015) (quoting *Johnson,* 574 U.S. at 11), and the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson,* 574 U.S. at 11.

That rationale has even more force in this case, as the Court "must construe the pleadings of *pro se* litigants liberally," *Andrade v. Gonzales,* 459 F.3d 538, 543 (5th Cir. 2006), "to prevent the loss of rights due to inartful expression," *Marshall v. Eadison*, 704CV123HL, 2005 WL 3132352, at *2 (M.D. Ga. Nov. 22, 2005) (citing *Hughes v. Rowe*, 449 U.S. 5, 9 (1980)); *see United States v. Ayika*, 554 F. App'x 302, 308 (5th Cir. 2014) (per curiam) (a court has a "duty to construe *pro se* [filings] liberally so that a litigant will not suffer simply because he did not attend law school or find a suitable attorney"); *but see Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465-B, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013) ("[L]iberal construction does not require that the Court or a defendant create causes of action where there are none.").

## B. Wrongful Foreclosure Claim

Ms. Caballero alleges that a property preservation specialist told her that Gateway Mortgage did not purchase the property, but she also states that the property "was said to have been sold back to Gateway Mortgage" at auction for

$206,000. Dkt. No. 34 at 2. Ms. Caballero alleges that this price "shock[s] the conscience." *Id.*

Ms. Caballero also states that the evaluation survey on May 12, 2023, was not done on the correct house. *See id.* at 6. In her response to Gateway Mortgage's response, Ms. Caballero attaches a copy of the survey that she received, which values the house at $239,000. *See* Dkt. No. 38-2. Ms. Caballero also attaches the Kaufman Central Appraisal District's appraisal of the house, which values the house at $318,717 in 2023. *See* Dkt. No. 38-3. Ms. Caballero also states that the $318,717 evaluation is incorrect. *See* Dkt. No. 38 at 4.

And, in her response, Ms. Caballero states she is asserting a wrongful foreclosure claim. *See id.*

"A wrongful-foreclosure claim under Texas law has three elements: (i) a defect in the foreclosure sale proceedings; (ii) a grossly inadequate selling price'; and (iii) a causal connection between the defect and the grossly inadequate selling price. The plaintiff must allege a grossly inadequate selling price in all but a specific category of cases where the plaintiff alleges that the defendant deliberately chilled the bidding at the foreclosure sale." *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 767-68 (5th Cir. 2016) (cleaned up).

If the fair market value price was $318,717, and the house was sold for $206,000, then the house was not sold at a "grossly inadequate selling price." "A grossly inadequate price would have to be so little as 'to shock a correct mind.'"

*Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 256 (5th Cir. 2013) (cleaned up).

Here, Ms. Caballero alleges that the house was sold for around 64-65% of its fair market value. Courts have found that a house that is sold for more than 50% of the fair market value is generally adequate. *See Water Dynamics Ltd. v. HSBC Bank USA, Nat'l Ass'n.*, 509 F. App'x 367, 369 (5th Cir. 2013) ("Texas cases establish that a foreclosure price exceeding 50% is not grossly inadequate."). Ms. Caballero has not alleged sufficient facts to make a plausible claim the house was sold for a "grossly inadequate selling price" when the house sold for over 60% of its fair market value.

A plaintiff does not need to show a grossly inadequate selling price if the plaintiff alleges "that the defendant-mortgagee (lender) deliberately 'chilled' the bidding at the foreclosure sale," but Ms. Caballero does not allege facts to meet this exception. *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 727 (5th Cir. 2013); *Chowdhury v. Carrington Mortg. Servs., LLC*, No. 3:23-cv-596-K-BN, 2024 WL 628027, at *5 (N.D. Tex. Jan. 18, 2024), *rep. & rec. adopted*, 2024 WL 628213 (N.D. Tex. Feb. 14, 2024).

And, even if the fair market value was incorrect, Ms. Caballero has not alleged a causal link between a procedural defect and a grossly inadequate sales price as required for a wrongful foreclosure claim. *See Mahmoud v. De Moss Owners Ass'n, Inc.*, 865 F.3d 322, 329 (5th Cir. 2017).

And, so, the undersigned finds Ms. Caballero has not alleged a wrongful foreclosure claim against Gateway Mortgage.

C. Trespass to Title Claim

It is unclear if Ms. Caballero intends to pursue the trespass to try title claim, which was alleged in the original petition.

In her response, Ms. Caballero states that the claim "should never have been [the] basis of [the] lawsuit in the original complaint, amended pleadings require 'clean up' as title was never in question." Dkt. No. 38 at 4. But she also states that "possession did come into question with regards to Plaintiff being advised that they signed over the deed, at which time, the Plaintiff was told by Linda Burrell and Carmen Good that they were attempting to 'save' the Plaintiff's home which was not true." *Id.*

> "To prevail on a trespass to try title claim, a plaintiff must establish (1) a regular chain of conveyances from the sovereign; (2) superior title out of a common source; (3) title by limitations; or (4) title by prior possession coupled with proof that possession was not abandoned. *Martin v. Amerman*, 133 S.W.3d 262, 265 (Tex. 2004), *superseded on other grounds by* TEX. CIV. PRAC. & REM. CODE § 37.004(c). As with a suit to quiet title, to succeed in a suit for trespass to try title, "the plaintiff must recover upon the strength of his own title and not the weakness of the defendant's title." [*Rocha v. Campos*, 574 S.W.2d 233, 235 (Tex. App.–Corpus Christi 1978, no writ.)] (citing *Hejl v. Wirth*, 343 S.W.2d 226, 226 (Tex. 1961))."

*Rummans v. HSBC Bank USA, Nat'l Ass'n as Tr. for Mastr Reperforming Loan Tr. 2005-2*, No. 3:22-cv-2046-M-BT, 2023 WL 6219396, at *3 (N.D. Tex. Sept. 1, 2023), *rep. & rec. adopted*, 2023 WL 6219890 (N.D. Tex. Sept. 25, 2023).

Ms. Caballero has not alleged facts sufficient to show it is plausible she has superior title.

To the extent that Ms. Caballero pleads that the substitute trustee's deed is insufficient because the "Trustee Deed does not have all the required language and incorrect information [a]s the deeds do not state the names, address[es], [and] contact information for all parties," Gateway Mortgage is correct that the deed is not required to include all parties' addresses under Texas Law. Dkt. No. 34 at 5.

And, as to the notice of substitute deed, the Texas Property Code only requires "that the name and a street address for a trustee or substitute trustees shall be disclosed" on a notice of foreclosure sale that will be conducted by a substitute trustee. TEX. PROP. CODE. § 51.0075(e); *see Wierman v. Prestige Default Servs.*, No. 21-11285, 2022 WL 2355439, at *2 (5th Cir. June 30, 2022).

D. Additional Claims

Ms. Caballero states that Gateway Mortgage Group did not buy back the property and that the property was placed on the online auction website Service Link prior to the foreclosure sale. *See* Dkt. No. 34 at 5. But these facts do not support a plausible claim against Gateway Mortgage.

Ms. Caballero also states that "loss mitigation was not offered to Plaintiff and notice of rights [were] not given to the plaintiff as required by federal law." *See* Dkt. No. 34 at 6. In her response, Ms. Caballero states that "Defendant failed to comply with loss mitigation provisions, per Plaintiff once an account was 80 days past due, Gateway would not accept any payments less than full amount owed. Defendant's action is inconsistent with handbook. Also, on or about September 18, 2022, plaintiff attempted to resume specified payment amounts. However, Defendant advised

-10-

Plaintiff to remain on forbearance and to not begin making payments." Dkt. No. 38 at 2.

As Gateway Mortgage correctly states, the Real Estate Settlement Procedures Act (RESPA) and Regulation X do "not require that the servicer provide the borrower any specific loss mitigation options." *Williams v. Freedom Mortg. Corp.*, No. 3:22-cv-1973-N, 2023 WL 1806023, at *2 (N.D. Tex. Feb. 7, 2023) (citing 12 C.F.R. § 1024.41(a)). And any duties Gateway Mortgage would have to Ms. Caballero regarding loss mitigation "are triggered only if a complete loss mitigation application is submitted or received." *See id.*

Ms. Caballero has not stated she submitted a loss mitigation application. Because Ms. Caballero has not submitted a loss mitigation application, she cannot plausibly state a claim under RESPA or Regulation X.

Ms. Caballero also states that "certain documents were re-produced (forged) before, during, and after [the] foreclosure sale that took place on July 5th." Dkt. No. 34 at 6. But Ms. Caballero has failed to plausibly state a claim of forgery.

"[A]llegations of fraud, including forgery, require a more specialized pleading." *Kafi, Inc. v. Deutsche Bank Nat'l Tr. Co.*, No. CV H-20-3247, 2021 WL 5143309 (S.D. Tex. Oct. 5, 2021), *rep. & rec. adopted*, No. CV H-20-3247, 2021 WL 5144358 (S.D. Tex. Nov. 3, 2021). "A pleading that does not include facts 'relating to who perpetrated the alleged forgery or how, when, and where the alleged forgery was executed ... falls short of the pleading requirements of [Federal Rule of Civil

Procedure] 9(b).'" *Id.* (citing *Kreway v. Countrywide Bank*, FSB, 647 F. App'x 437, 438 (5th Cir. 2016)).

Ms. Caballero does not state the how, when, or where of the alleged forgery, and, so, she has failed to plead with the particularity that Rule 9(b) requires. The Court should deny leave to add this claim without prejudice to Ms. Caballero's revising her request to amend add a forgery claim that complies with governing pleading requirements.

Ms. Caballero also states in her response that Gateway "neglected to send notices via certified mail as documented (Exhibit 4) and falsified Central Appraisal District (CAD) reports (Exhibit 5)." Dkt. No. 38 at 5. These are new claims raised for the first time in a response and should not be considered on this motion to amend.

II.    Joinder of Additional Parties

The Court should next consider Ms. Caballero's Motion for Joinder.

A.    Legal Standards

Under Federal Rule of Civil Procedure 20, governing permissive joinder of parties, persons "may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." FED. R. CIV. P. 20(a)(2).

But the United States Court of Appeals for the Fifth Circuit has explained that, while Federal Rule of Civil Procedure "18 allows plaintiffs to join, as independent or alternative claims, as many claims as [they have] against an opposing party" and "Rule 20 gives plaintiffs latitude to join defendants," "Rules 18 and 20 say nothing about adding a claim or a party after the original complaint's filing." *Carver v. Atwood*, 18 F.4th 494, 497 (5th Cir. 2021) (cleaned up). Rather, "[t]hat is where Rule 15 comes in," and "Rule 15(a)(2) requires courts freely give leave [to amend] when justice so requires." *Id.* at 497-98 (cleaned up).

And a case's originating in state court does not change that where "'[a] removed action does not need to be repleaded "unless the court orders it" and, so, "[i]n a removed case, plaintiffs can rely on the state pleadings." *Pena v. City of Rio Grande City*, 879 F.3d 613, 617 (5th Cir. 2018) (quoting FED. R. CIV. P. 81(c)(2)).

Leave under Rule 15(a)(2) "is not automatic, however, and is at the discretion of the district court." *Moore v. Manns*, 732 F.3d 454, 456 (5th Cir. 2013) (citing *Muttathottil v. Mansfield*, 381 F, App'x 454, 457 (5th Cir. 2010)). As discussed above as to Ms. Caballero's Motion to Amend, "[i]n making this decision, a court may consider: undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Muttathottil*, 381 F. App'x at 457 (cleaned up).

And 28 U.S.C. § 1447(e) further governs situations where a proposed, post-removal amended complaint will join a defendant whose presence in the suit will

-13-

destroy diversity jurisdiction. *See Moore*, 732 F.3d at 456. That provision provides: "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e).

And, so, under Section 1447(e), if the plaintiff, after removal to federal court, seeks to join a defendant who is a citizen of the same state as the plaintiff (that is, a "non-diverse defendant"), "[t]he court should 'use its discretion in deciding whether to allow that party to be added'" and "should scrutinize an amended pleading naming a new non-diverse defendant in a removed case 'more closely than an ordinary amendment.'" *Priester v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667, 679 (5th Cir. 2013) (quoting *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987)); *Moore*, 732 F.3d at 456 (quoting *Hensgens*, 833 F.2d at 1182).

The Fifth Circuit explained that Rule 15(a) (as it was worded at that time) "provides that leave to amend 'should be freely given when justice so requires,' and Rule 20 permits joinder of proper parties" and that, "when faced with an amended pleading naming a new nondiverse defendant in a removed case," "justice requires that the district court consider a number of factors to balance the defendant's interests in maintaining the federal forum with the competing interests of not having parallel lawsuits." *Hensgens*, 833 F.2d at 1182.

And, so, while applying "a 'higher level of scrutiny' … to an amended pleading naming a new nondiverse defendant in a removed case," *Guijarro v. Enter. Holdings, Inc.*, 39 F.4th 309, 315 (5th Cir. 2022) (quoting *Allen v. Walmart Stores,*

*L.L.C.*, 907 F.3d 170, 185 (5th Cir. 2018)), "[i]n deciding whether to allow leave to amend, a court should consider several factors, including '[1] the extent to which the purpose of the amendment is to defeat federal jurisdiction, [2] whether plaintiff has been dilatory in asking for amendment, [3] whether plaintiff will be significantly injured if amendment is not allowed, and [4] any other factors bearing on the equities.'" *Moore*, 732 F.3d at 456 (quoting *Hensgens*, 833 F.2d at 1182).

The Fifth Circuit instructed that "[t]he district court, with input from the defendant, should then balance the equities and decide whether amendment should be permitted." *Hensgens*, 833 F.2d at 1182.

And, as part of this analysis, "[t]he plaintiff's failure to state a plausible claim against a proposed defendant is evidence of the amendment's improper purpose and sufficient reason to deny leave to amend." *Guijarro*, 39 F.4th at 315 (citing *Allen*, 907 F.3d at 186, and *Moore*, 732 F.3d at 457).

If the district court "permits the amendment of the nondiverse defendant, it then must remand to the state court. If the amendment is not allowed, the federal court maintains jurisdiction." *Hensgens*, 833 F.2d at 1182.

B. <u>Ms. Caballero's requested additional defendants</u>

Ms. Caballero seeks to join Michael Schroeder, Linda Burrell, Carmen Good, constables Jason Johnson, Odom, Barnes, Frias, Kitchens, Brandy Bacon, Johnathan Lyles, Donna Jones, Gary Parrish, Paul Leake, Diane Leake, Belinda Cates, Keith Stalka, Bradley Peace, Cindy Grammer, Blair Leake, and the Kaufman County Sheriff's Department. *See* Dkt. No. 25.

Ms. Caballero has affirmatively pled that Michael Schroeder, Linda Burrell, Carmen Good, Jason Johnson, all deputy constables including John Odom, Guadalupe Frias, Jerry Kitchens, Aiden Winters, and Xavier Jamison, Brandy Bacon, Johnathan Lyles, Donna Jones, Paul Leake, Diane Leake, Belinda Cates, Keith Stalka, Bradley Pace, Cindy Grammer, and Blair Leake are all citizens of Texas and, so, are non-diverse defendants. *See* Dkt. No. 56. While Ms. Caballero does not plead Constable Barnes's citizenship individually, she states that all deputy constables are citizens of Texas, so the undersigned will consider Constable Barnes a non-diverse defendant. Ms. Caballero has pled that Gary Parrish is a citizen of Oklahoma and, so, is a diverse defendant.

C. Michael Schroeder

Ms. Caballero seeks to join Mr. Schroeder, Gateway Mortgage's former counsel. Dkt. No. 34 at 1. Ms. Caballero states that the "foreclosure was improper according to specific of said attorney Michael Schroeder with regards to the illegal foreclosure practice and fraudulent activity which initiated the eviction process." *Id.* at 5. She also states "[p]revious [c]ounsel for the Defendant committed fraud with regards to the said foreclosure by falsifying documents." *Id.* at 6.

In her response, Ms. Caballero adds that there was no transfer of title, even though she requested that Michael Schroeder to provide it. *See* Dkt. No. 38 at 4.

When pleading fraud or negligent misrepresentation, the plaintiff "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see also Cole v. C.R. Bard, Inc.*, No. 4:20-CV-01630, 2021 WL 784661, at *5

(S.D. Tex. Feb. 11, 2021), *rep. & rec. adopted*, 2021 WL 784136 (S.D. Tex. Feb. 26, 2021). "To plead fraud adequately, the plaintiff must 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'" *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 551 (5th Cir. 2010) (quoting *ABC Arbitrage v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002)).

Even considering Ms. Caballero's statement first raised in response that she has not received documentation of transfer of title, the Texas Property Code permits mortgage holders the ability to non-judicially foreclose on the property without providing "proof of ownership of the original note or deed of trust before conducting a nonjudicial foreclosure sale." *Bryant v. JP Morgan Chase Bank*, No. 3:12-cv-2650-M, 2013 WL 664708, at *4 (N.D. Tex. Feb. 4, 2013), *rep. & rec. adopted*, 2013 WL 673980 (N.D. Tex. Feb. 25, 2013).

Ms. Caballero's statements that Mr. Schroeder committed fraudulent activity and falsified documents are conclusory, meaning that she does not have sufficient factual allegations to state a claim. And, so, Ms. Caballero has not met the standard in alleging fraud against Mr. Schroeder.

But any dismissal under Rule 9(b) would ordinarily be without prejudice and does not, under the present circumstances, amount to a Rule 12(b)(6) failure to state a claim or support a finding of futility. A "plaintiff's failure to meet the specific pleading requirements should not automatically or inflexibly result in dismissal of the complaint with prejudice to re-filing," and, "[a]lthough a court may dismiss

the claim, it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so." *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000) (cleaned up).

But, although Ms. Caballero has stated with sufficient plausibility a claim against Mr. Schroeder for Rule 15(a)(2)'s purposes, Mr. Schroeder is a non-diverse defendants, and so the Court must analyze the amendment under the *Hensgens* factors: "[1] the extent to which the purpose of the amendment is to defeat federal jurisdiction, [2] whether plaintiff has been dilatory in asking for amendment, [3] whether plaintiff will be significantly injured if amendment is not allowed, and [4] any other factors bearing on the equities." *Moore*, 732 F.3d at 456 (cleaned up).

"When a plaintiff states a viable claim against a non-diverse defendant, courts generally find that the 'principal purpose of the amendment was not to defeat federal jurisdiction.'" *Diaz v. Quantem Aviation Servs., LLC, Defendant.*, No. 3:23-cv-1975-B, 2024 WL 1607066, at *2 (N.D. Tex. Apr. 11, 2024) (citations omitted). Assuming Ms. Caballero stated a plausible claim, this factor weighs in favor of granting leave to amend.

In determining if a plaintiff has been dilatory, "'courts consider the amount of time that has passed between the plaintiff's motion to amend and the filing of the original petition and notice of removal.'" *Ybarra v. Walmart Inc.*, No. SA-23-CV-00932-XR, 2023 WL 7783142, at *3 (W.D. Tex. Nov. 13, 2023) (citations omitted). "If significant activity beyond the pleading stage has not yet occurred, courts often find

-18-

that amendment is timely, unless the plaintiff 'had ample information about [the proposed defendant's] identity and involvement in [the underlying controversy] before [plaintiff] filed the suit in state court.'" *Skinner Cap. LLC v. Arbor E&T, LLC*, No. 3:23-cv-2320-D, 2024 WL 1219235, at *3 (N.D. Tex. Mar. 21, 2024) (citing *Estate of Alex ex rel. Coker v. T-Mobile US, Inc.*, No. 3:17-cv-2622-M, 2018 WL 993784, at *2 (N.D. Tex. Feb. 21, 2018) (alterations in original; quoting *Gallegos v. Safeco Ins. Co. of Ind.*, Civ. A. No. H–09–2777, 2009 WL 4730570, at *4 (S.D. Tex. Dec. 7, 2009)).

Ms. Caballero filed her Motion for Leave to File approximately four months after filing her petition in state court. *See* Dkt. No. 1; Dkt. No. 32. While Ms. Caballero did have some information about Mr. Schroeder before filing her state petition, no significant activity beyond the pleading stage had occurred, and Ms. Caballero filed her motion before the amendment deadline. *See Diaz*, 2024 WL 1607066, at *3; *cf. Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 186 (5th Cir. 2018) ("As to Falcon Safety Products, [plaintiff] was dilatory in seeking to add this manufacturer. [Plaintiff] had knowledge that Falcon Safety Products was the correct manufacturer as early as the day that she filed her amended complaint.").

Ms. Caballero has not been dilatory in seeking amendment.

The Court must also assess if Ms. Caballero would "suffer a significant injury if the Court denied her leave to amend." *Diaz*, 2024 WL 1607066, at *3.

The Court considers whether the plaintiff can obtain complete relief without the amendment, whether the plaintiff can pursue any potential claims in state

court, and whether "[p]laintiff will be required to litigate separate claims in separate forums – on different timetables, under different procedural rules, and with potentially conflicting results – arising out of the same set of facts." *Ybarra*, 2023 WL 7783142, at \*4; *see Mid-Am. Supply Corp. v. Truist Bank*, No. 4:21-CV-00841, 2023 WL 1765908, at \*5 (E.D. Tex. Feb. 3, 2023).

Ms. Caballero will not suffer injury if amendment is denied. Ms. Caballero can pursue any potential claims against Mr. Schroeder in state court, and there are no overlapping questions of law or fact that would result in parallel litigation.

There are no other factors bearing on the equities that the Court should consider. And so, balancing the *Hensgens* factors, Ms. Caballero should be permitted leave to join Mr. Schroeder.

Mr. Schroeder also acted as substitute trustee for the foreclosure sale. *See* Dkt. No. 37 at 1. While Ms. Caballero does not state who she is referring to, Ms. Caballero claims that the substitute trustee was not neutral. Dkt. No. 34 at 5. The undersigned will construe this as an allegation against Mr. Schroeder.

Ms. Caballero has not alleged a claim against Mr. Schroeder for being a non-neutral substitute trustee. Texas law allows "a mortgage servicer [to] authorize an attorney to appoint a substitute trustee or substitute trustees on behalf of a mortgagee." TEX. PROP. CODE § 51.0075(d). And, although a substitute trustee has a "duty to act with impartiality and fairness, a substitute trustee does not breach this duty by also representing a lender or beneficiary in his capacity as an attorney."

*Rodriguez v. Reyes*, No. 01-22-00652-CV, 2023 WL 4937502, at *4 (Tex. App. Aug. 3, 2023).

And, so, as the *Hensgens* factors weigh in favor of granting leave to amend to join Mr. Schroeder as to the claim for fraud, the Court should grant leave to amend to add him as a defendant, after which the Court will no longer have subject-matter jurisdiction under Section 1332(a) and must remand the case to state court.

## D. Linda Burrell and Carmen Good

Ms. Caballero requests to join Linda Burrell and Carmen Good. Ms. Caballero states that Carmen Good, Linda Burrell's assistant, approached Ms. Caballero on June 28, 2023 at her home and told Ms. Caballero that she could prevent the foreclosure sale. *See* Dkt. No. 34 at 1.

Ms. Caballero states that Linda Burrell, Linda Burrell's mother-in-law, and Carmen Good came to her home on June 29, 2023, and had her sign paperwork to obtain a TRO. *See id.* Ms. Caballero also signed other documents in case the TRO was not approved, and Ms. Caballero needed to complete a short-sell. *See id.* Linda Burrell also initiated a cash-for-keys offer that Ms. Caballero refused. *See id.* at 2.

Ms. Caballero states there was deception regarding filing the TRO and, in her response, states that she was advised that she signed over the deed, "at which time, the Plaintiff was told by Linda Burrell and Cameron Good that they were attempting to 'save' the Plaintiff's home which was not true." Ms. Caballero states that she contacted another realtor who worked for the same brokerage company as

Ms. Burrell and who told Ms. Caballero she had signed over her deed and to hire an attorney. *See* Dkt. No. 34 at 1.

Construing Ms. Caballero's claims liberally, it appears Ms. Caballero is attempting to state a claim for fraud or negligent misrepresentation. As stated above, when pleading fraud or negligent misrepresentation, the plaintiff "must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b); *see also Cole*, 2021 WL 784661, at *5. "To plead fraud adequately, the plaintiff must 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'" *Sullivan*, 600 F.3d at 551 (quoting *ABC Arbitrage*, 291 F.3d at 350).

But as discussed above, any dismissal under Rule 9(b) would ordinarily be without prejudice and does not, under the present circumstances, amount to a Rule 12(b)(6) failure to state a claim or support a finding of futility. A "plaintiff's failure to meet the specific pleading requirements should not automatically or inflexibly result in dismissal of the complaint with prejudice to re-filing," and, "[a]lthough a court may dismiss the claim, it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so." *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000) (cleaned up).

But, although Ms. Caballero has stated with sufficient plausibility a claim against Ms. Burrell and Ms. Good for Rule 15(a)(2)'s purposes, Ms. Burrell and Ms. Good are non-diverse defendants, and so the Court must analyze the amendment

under the *Hensgens* factors. The undersigned has already found that Ms. Caballero has not been dilatory in asking for amendment and the purpose of the amendment is not to defeat federal jurisdiction. Similar to the analysis regarding Mr. Schroeder, while Ms. Caballero did have some information about Ms. Good and Ms. Burrell before filing her state petition, no significant activity beyond the pleading stage had occurred, and Ms. Caballero filed her motion before the amendment deadline. *See Diaz*, 2024 WL 1607066, at *3; *cf. Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 186 (5th Cir. 2018). There are no other factors bearing on the equities for the undersigned to consider. And while Ms. Caballero will not be prejudiced by denying leave to amend, the *Hensgens* factors still weigh in favor of granting leave to amend.

And, so, the Court should grant leave to amend to add Ms. Good and Ms. Burrell as defendants, after which the Court will no longer have subject-matter jurisdiction under Section 1332(a) and must remand the case to state court.

### E. Brandy Bacon

Ms. Caballero also requests to join Brandy Bacon, who served as substitute trustee. Ms. Caballero states that the substitute deed was executed on July 10, 2023 instead of July 5, 2023, the date the sale took place. *See* Dkt. No. 34 at 2, 5. But the deed does not need to be dated with a certain time following the sale. *See Martinez v. Reconstruct Co., N.A.*, No. SA-13-CA-0541-FB, 2015 WL 12552032, at *4 (W.D. Tex. Mar. 13, 2015) ("[P]laintiff does not point to any provision requiring the trustee's deed to be signed or dated within a certain time, and the Court, upon its review of the Property Code, could not find one.").

As to claims that the substitute trustee was not neutral, the undersigned addressed that above as to Michael Schroeder.

As there is no claim plausibly stated against Ms. Bacon, amendment is futile. And, as Brandy Bacon is a non-diverse defendant, the fact that the amendment is not viable demonstrates the amendment's improper purpose under the *Hensgens* analysis.

And, so, the Court should not grant leave to join Brandy Bacon to this suit.

F.  <u>Gary Parrish and Cindy Grammer</u>

Ms. Caballero requests to join Gary Parrish, a citizen of Oklahoma. She does not include any factual allegations in her motion to amend or proposed amended complaint about Gary Parrish.

Gateway Mortgage states that Ms. Caballero is trying to join "someone named Gary Parrish." *See* Dkt. No. 37 at 2. In her response, Ms. Caballero states that she served Gary Parrish as the registered agent for Gateway Corporation. *See* Dkt. No. 38 at 2.

Ms. Caballero has failed to state a plausible claim against Mr. Parrish. Ms. Caballero's argument that Gary Parrish is a registered agent is a new argument raised in her reply that the Court should not consider. But, even if the Court considered the new factual allegations, they would still not support a claim against Mr. Parrish.

As there is no claim plausibly stated against Mr. Parrish, amendment is futile. And, so, the Court should not grant leave to join Gary Parrish to this suit.

Ms. Caballero also requests to join Cindy Grammer. She does not include any factual allegations in her motion to amend or proposed amended complaint about Ms. Grammer. She states in her response that Ms. Grammer is the process server who served Gary Parrish. *See id.*

Even considering Ms. Caballero's claims raised for the first time in response, Ms. Caballero does not state any factual allegations that would plausibly state a claim against Ms. Grammer.

As there is no claim plausibly stated against Ms. Grammer, amendment is futile. And, as Ms. Grammer is a non-diverse defendant, the fact that the amendment is not viable demonstrates the amendment's improper purpose under the *Hensgens* analysis.

And, so, the Court should not grant leave to join Cindy Grammer to this suit.

G. <u>Keith Stalka</u>

Ms. Caballero has failed to state a claim against Keith Stalka. Ms. Caballero has only mentioned Mr. Stalka in her Motion for Joinder and has not stated any facts against him which could state a claim. *See* Dkt. No. 35.

As there is no plausible claim against Mr. Stalka, amendment is futile. And, as Mr. Stalka is a non-diverse defendant, the fact that the amendment is not viable demonstrates the amendment's improper purpose under the *Hensgens* analysis.

And, so, the Court should not grant leave to join Keith Stalka to this suit.

H. <u>Bradley Pace</u>

Ms. Caballero also requests to add Bradley Pace, the auctioneer, to the suit. *See id.* The Court should not join Bradley Pace because Ms. Caballero has not stated any facts that would plausibly support a claim against Bradley Pace.

As there is no valid claim against Mr. Pace, amendment is futile. And, as Mr. Pace is a non-diverse defendant, the fact that the amendment is not viable demonstrates the amendment's improper purpose under the *Hensgens* analysis.

And, so, the Court should not grant leave to join Bradley Pace to this suit.

I. <u>Paul Leake, Jonathan Lyles, Belinda Cates, Diane Leake, and Blair Leake</u>

Ms. Caballero requests to join Paul Leake, Johnathan Lyles, Belinda Cates, Diane Leake, and Blair Leake.

Ms. Caballero has failed to plausibly state a claim against Blair Leake and Diane Leake because she provides no factual allegations against them. Blair Leake is only mentioned in the Motion for Joinder. *See* Dkt. No. 35. Ms. Caballero only generally alleges malpractice and negligence against Diane Leake. *See* Dkt. No. 34 at 5.

As there is no plausible claim against Blair Leake and Diane Leake, amendment is futile. And, as Blair Leake and Diane Leake are non-diverse defendants, the fact that the amendment is not viable demonstrates the amendment's improper purpose under the *Hensgens* analysis.

And, so, the Court should not grant leave to join Blair Leake and Diane Leake to this suit.

Ms. Caballero brings negligence and malpractice claims against her former attorney Paul Leake and against Jonathan Lyles and Belinda Cates. Dkt. No. 34 at 4.

Ms. Caballero alleges that she met with Jonathan Lyles at Mr. Leake's office and that he took notes during their meeting. *See* Dkt. No. 32 at 1. He did not give her the notes regarding her case because he stated they belonged to Mr. Paul Leake. *See* Dkt. No. 34 at 3. She also states that "the electronic correspondence was destroyed [or] deleted" and that the office staff caused a disruption causing Ms. Caballero to leave her phone in the office. *See id.*

Ms. Caballero states that she spoke with Mr. Paul Leake weekly but that he did not notify her of her September 6, 2023 court date. *See id.* She also states that Mr. Leake failed to appear three times in this case. *See id.* at 5. She states that Mr. Leake did not represent her to the best of his abilities. *See* Dkt. No. 32 at 2.

Ms. Caballero states that Belinda Cates is Mr. Leake's paralegal and that she did not give Ms. Caballero the original file of her case. *See id.* at 1. Ms. Caballero states that that the petition Ms. Caballero received was different than what was filed with state court. *See id.* Ms. Caballero states that the petition she received requested damages of $600,000 and the petition filed with the court sought damages of $100,000. *See id.*

Ms. Caballero states that she suffered both mental anguish damages, monetary loss, and substantial asset loss due to the actions of the parties. *See* Dkt. No. 34 at 6.

To bring a claim of legal malpractice, plaintiff must show that "(1) the lawyer owed a duty of care to the client; (2) the lawyer breached that duty; and (3) the lawyer's breach proximately caused damage to the client." *Rogers v. Zanetti*, 518 S.W.3d 394, 400 (Tex. 2017).

Ms. Caballero has failed to plausibly allege that Jonathan Lyles or Belinda Cates caused her damages by their actions.

As there is no plausible claim against Jonathan Lyles and Belinda Cates, amendment is futile. And, as Jonathan Lyles and Belinda Cates are non-diverse defendants, the fact that the amendment is not viable demonstrates the amendment's improper purpose under the *Hensgens* analysis.

And, so, the Court should not grant leave to join Jonathan Lyles and Belinda Cates to this suit.

But liberally construing the motion, Ms. Caballero may have stated a claim for legal malpractice against Paul Leake, as his alleged failure to appear or notify Ms. Caballero of her eviction hearing resulted in a default against Ms. Caballero.

And, for the same reasons explained above, the *Hensgens* factors weigh in favor of granting leave to amend to join Paul Leake. And so, the Court should grant leave to amend to add him as a defendant, after which the Court will no longer have subject-matter jurisdiction under Section 1332(a) and must remand the case to state court.

J.  <u>Donna Jones</u>

Donna Jones is a county clerk for Kaufman County. *See* Dkt. No. 34 at 3. Ms. Jones called Ms. Caballero on August 29, 2023 to notify her of an eviction hearing, and Ms. Caballero told her Mr. Leake was representing her. *See id.* Ms. Caballero sent Donna Jones her proof of representation. *See id.* Ms. Caballero states that she did not receive notice from anyone regarding the September 6, 2023, court date. *See id.* In response, Gateway Mortgage asserts that "[w]ith respect to the claims against government entities and government officials and employees, these are either barred under the Eleventh Amendment, to the extent Plaintiff sues them in their official capacities, or Plaintiff has failed to state a claim in connection with a violation of the Fourteenth Amendment that would defeat qualified immunity." Dkt. No. 37 at 5.

It is unclear if Ms. Caballero is suing Ms. Jones in her official or individual capacity. If Ms. Caballero is suing Ms. Jones in her official capacity, Ms. Caballero's claim is properly considered as alleged against Kaufman County. *See Flores v. City of San Benito*, No. 1:20-CV-169, 2021 WL 2367911, at *6 (S.D. Tex. May 12, 2021), *rep. & rec. adopted sub nom. Flores v. City of San Benito, Tex.*, 2021 WL 2367866 (S.D. Tex. June 9, 2021) (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)) ("A suit against a government employee in his or her official capacity 'is, in all respects other than name, to be treated as a suit against the entity.'" ).

Under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978), "[f]or a municipality to be liable under § 1983, there must be: (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose 'moving force' is the

policy or custom." *Rosas v. Perez*, No. C.A. C-05-102, 2005 WL 2297509, at *2 (S.D. Tex. Sept. 21, 2005), *subsequently aff'd*, 206 F. App'x 355 (5th Cir. 2006). Ms. Caballero has not alleged facts to support a claim of municipal liability.

If Ms. Caballero is suing Ms. Jones in her individual capacity, Ms. Jones would "'have absolute immunity from actions for damages arising from acts they are specifically required to do under court order or at a judge's discretion.'" *Samuel of Fam. Jeter v. Child Support Div. 42 U.S.C. §654(3)*, No. 3:18-CV-273-L-BH, 2018 WL 6185546, at *9 (N.D. Tex. Nov. 5, 2018), *rep. & rec. adopted sub nom. Samuel of the Fam. Jeter v. Child Support Div. 42 U.S.C. §1983(3)*, No. 3:18-CV-273-L, 2018 WL 6181283 (N.D. Tex. Nov. 27, 2018) (quoting *Tarter v. Hury*, 646 F.2d 1010, 1013 (5th Cir. 1981)). County clerks "enjoy [ ] only qualified immunity[, however,] for those routine duties not explicitly commanded by a court decree or by the judge's instructions." *Id.* (quoting *Clay v. Allen*, 242 F.3d 679, 682 (5th Cir. 2001)).

Regardless of what capacity Ms. Caballero is suing Ms. Jones in, she has failed to state a claim.

First, it is unclear what claim Ms. Caballero is alleging against Ms. Jones. To the extent that she is alleging Ms. Jones did not notify her of the September 6, 2023, hearing, Ms. Caballero contradicts herself by alleging that Ms. Jones called her to notify her of the hearing. *See* Dkt. No. 34 at 3. And Ms. Caballero provides no other factual allegations to support a claim against Ms. Jones.

As there is no plausible claim stated against Donna Jones or Kaufman County, amendment is futile. And, as Donna Jones and Kaufman County are non-

diverse defendants, the fact that the amendment is not viable demonstrates the amendment's improper purpose under the *Hensgens* analysis.

And, so, the Court should not grant leave to join Donna Jones or Kaufman County to this suit.

K.  <u>Kaufman County Sheriff's Department</u>

Ms. Caballero also requests to join the Kaufman County Sheriff's Department.

The Court should not grant leave to join the Kaufman County Sheriff's Department. Plaintiff cannot sue the Kaufman County Sheriff's Department because it does not have a "separate legal existence" from the government and, so, is not a "jural entity" that can be sued. *Henry v. Kaufman Cnty. Sheriffs Dep't*, No. 3:00-cv-2308-M, 2001 WL 1012690, at *3 (N.D. Tex. Aug. 20, 2001) ("The Kaufman County Sheriffs Department is not a jural entity that can be sued.").

L.  <u>Constables Odom, Barnes, Frias, Kitchens, and Jason Johnson</u>

Ms. Caballero requests to join constables Odom, Barnes, Frias, Kitchens, and Jason Johnson. Ms. Caballero states that she was detained on fabricated charges and suffered injuries during an arrest on October 13, 2023 and that her dog was left in its kennel following the arrest until Ms. Caballero returned to the house on October 25, 2023. *See* Dkt. No. 34 at 4.

Ms. Caballero also states that the constables set all her belongings on the driveway December 5, 2023, and that the opposing attorney told her she would have ample notice to vacate the property. *See id.*

In her Motion for Discovery, Ms. Caballero alleges that

[o]n October 13th Constable Jason Johnson and Constable Barnes fabricated charges against the plaintiff for excessive use of 911 and escape. The plaintiff stayed in jail from October 13th to around October the 18th and then was released in the custody of Terrell State hospital for a mental evaluation. The plaintiff returned home on October 25th to find her dog in the kennel despite asking numerous times during the unjust arrest for them to take care of the Plaintiff's Service Animal. let the record reflect that my dog the plane's dog went without food and water for approximately 14 days upon entry into the home the dog was very lethargic and breathing shallow. The plaintiff had no resources to get the dog to the veterinarian, so the plaintiff had to nurse the dog back to health herself with Pedialyte and by spoon feeding the dog ice chips. Please let the record reflect that once the plaintiff was placed into the police car she got out of the police car due to being afraid as the plaintiff was not sure as to what they would do to her due to reporting the fraudulent foreclosure. During the arrest, the plaintiff suffered back pain, hip pain and wrist pain due to the two officers slamming her to the ground in the living room of her home and was on top of the plaintiff.

On or about October 30, 2023, the plaintiff attempted to contact Adult Protective Services to report the constables abuse of power despite the neighbor calling Adult Protective Services the Constable showed up and detained the plaintiff for second time and Constable Odom stated that the judge had signed an emergency order for a mental health evaluation. It should be noted and let the record reflect that the psychiatrist on staff at Terrell State Hospital stated to the plaintiff that there was no order signed by the Judge and the Plaintiff was released upon entry and took the assessment and passed with flying colors.

On or about February the 8, 2024, the plaintiff encountered Constable Jameson and Constable Winters due to having a conflict with the people in which the plaintiff lived with. Let the record reflect that on February 7, 2023, the plaintiff was able to establish and prove residency. On February the 8th the person in which the planet was residing with filed a false police report and despite the evidence showing and proving that the planet resided there the planet was taken into custody and charged with harassment.

Dkt. No. 45.

It is unclear if Ms. Caballero is suing the constables in their official or individual capacity, so the undersigned will analyze both.

"A suit against a government employee in his or her official capacity 'is, in all respects other than name, to be treated as a suit against the entity.'" *Flores*, No. 2021 WL 2367911, at *6 (quoting *Kentucky*, 473 U.S. at 166). This claim fails for the same reasons that the claim against Donna Jones fails: Ms. Caballero has failed to allege facts showing municipal liability.

If Ms. Caballero is suing the constables in their individual capacities, construing her complaint liberally, Ms. Caballero has brought a claim under 28 U.S.C. § 1983 for false arrest or detention and excessive force. Defendants allege that Ms. Caballero has failed to state a claim that would "defeat qualified immunity." Dkt. No. 37 at 5.

A plaintiff "need not anticipate a qualified immunity defense," *Fisher v. Dall. Cnty.*, 299 F.R.D. 527, 532 (N.D. Tex. 2014), and the Rule 12(b)(6) standards are "not heightened … [w]hen a plaintiff pleads a § 1983 claim that implicates qualified immunity," *Allen v. Hays*, 65 F.4th 736, 744 (5th Cir. 2023) (citing *Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020)).

Instead, a plaintiff need only "plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Id.* (quoting *Arnold*, 979 F.3d at 267). That is, "a plaintiff must plead qualified-immunity facts with the minimal specificity that would satisfy *Twombly* and *Iqbal*." *Arnold*, 979 F.3d at 267; *accord Babinski v. Sosnowsky*, 79 F.4th 515, 519-20 (5th Cir. 2023) ("A plaintiff attempting to overcome qualified immunity at the Rule

12(b)(6) stage must plead facts that allow this court to reasonably infer that the defendant is liable for the harm alleged." (citing *Arnold*, 979 F.3d at 267); *see also Valderas v. City of Lubbock*, 937 F.3d 384, 389 (5th Cir. 2019) (where the defense applies and is raised in good faith, "the plaintiff bears the burden of demonstrating that a defendant is not entitled to qualified immunity").

    1.  <u>Excessive Force</u>

    To plead excessive force, Ms. Caballero must allege "(1) an injury (2) which resulted directly and only from the use of force that was clearly excessive to the need and (3) the force used was objectively unreasonable." *Hale v. City of Biloxi, Mississippi*, 731 F. App'x 259, 262 (5th Cir. 2018) (citations omitted). Ms. Caballero alleges back pain, hip injuries, and a wrist injury resulting from the officers "slamming her to the ground" and being "on top" of her. Dkt. No. 45. Ms. Caballero has alleged an injury that resulted from the use of force.

    An excessive force "analysis turns on the facts of each case, including 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Hale*, 731 F. App'x at 262. Although Ms. Caballero has not provided the circumstances surrounding the arrest and has not affirmatively pled the force was clearly excessive or objectively unreasonable, construing her claims liberally she has sufficiently pled a claim for excessive force at this stage.

    2.  <u>Unlawful Arrest and Detention</u>

It also appears that Ms. Caballero is bringing a claim for unlawful detention or arrest based on two incidents.

Ms. Caballero states that officers "falsely detained [her] on fabricated charges" during an "unjust arrest" on October 13, 2023, after which she was at some point placed in Terrell State Hospital. Dkt. No. 34 at 5.

Ms. Caballero also states that officers detained her on or about October 30, 2023, when they told her they had a judge's warrant for a mental health evaluation and brought her to Terrell State Hospital. *See* Dkt. No. 45. Ms. Caballero states that the psychiatrist at the hospital told her there was not a warrant for an evaluation. *See id.*

Turning to her claims that officers falsely detained and arrested her on October 13, 2023, Ms. Caballero would need to state a plausible claim that the officers did not have probable cause to arrest her.

As Courts have held, "[t]he 'constitutional torts' of false arrest, unreasonable seizure, and false imprisonment … require a showing of no probable cause." *Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001)); *accord Parm v. Shumate*, 513 F.3d 135, 142 (5th Cir. 2007) ("In order to prevail in a § 1983 claim for false arrest, a plaintiff must show that he was arrested without probable cause in violation of the Fourth Amendment.").

"The [United States] Supreme Court has defined probable cause as the 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances

shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Piazza v. Mayne*, 217 F.3d 239, 245-46 (5th Cir. 2000) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). "The facts must be known to the officer at the time of the arrest" and "must be particularized to the arrestee." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009) (citations omitted). And a court "will find that probable cause existed if the officer was aware of facts justifying a reasonable belief that an offense was being committed, whether or not the officer charged the arrestee with that specific offense." *Id.* (citation omitted); *see also McLin v. Ard*, 866 F.3d 682, 694 (5th Cir. 2017) ("[P]robable cause is the 'sum total of layers of information and the synthesis of what police have heard, what they know, and what they observed as trained officers.'" (quoting *United States v. Shaw*, 701 F.2d 367, 376 (5th Cir. 1983) (quoting, in turn, *United States v. Edwards*, 577 F.2d 883, 895 (5th Cir. 1978) (en banc)))).

Ms. Caballero alleges that officers arrested her on fabricated charges, which can indicate an arrest was without probable cause. *See Smith v. Locker*, No. SA-23-CV-00881-OLG, 2024 WL 763312 (W.D. Tex. Feb. 22, 2024), *rep. & rec. adopted sub nom. Smith v. Guadalupe Cnty., Texas*, No. SA:5:23-CV-00881-OLG, 2024 WL 1293885, at *7 (W.D. Tex. Mar. 25, 2024) (finding that when plaintiff sufficiently alleged the officers fabricated the charge they arrested him on, plaintiff had sufficiently alleged a claim of false arrest.) *cf. Goodarzi v. Hartzog*, No. CIV.A. H-12-2870, 2014 WL 722109, at *5 (S.D. Tex. Feb. 21, 2014) (finding plaintiff's "allegations of false arrest conclusory and implausible" when "[d]espite the facts

demonstrating the existence of probable cause for [plaintiff]'s arrest, she claims that her 'seizure and arrest were without probable cause' and that the charges were 'fabricated.'").

Turning to the false detention claim on October 30, 2023, Ms. Caballero alleges that the officers detained her on an order that did not exist after she and possibly a neighbor called Adult Protective Services.

Courts have held that an "apprehension for a mental health evaluation constitute[s] a Fourth Amendment seizure." *Clark v. Thompson*, 850 F. App'x 203, 210 (5th Cir. 2021). And "[t]he probable cause standard applies in the context of a seizure of the mentally ill. … [P]robable cause exists where the facts and circumstances within the officer's knowledge at the time of the seizure are sufficient for a reasonable person to conclude that an individual is mentally ill and poses a substantial risk of serious harm." *Cantrell v. City of Murphy*, 666 F.3d 911, 923 n.8 (5th Cir. 2012); *see also id.* ("In Texas, a peace officer may, without a warrant, take a person into custody if (1) the officer has reason to believe and does believe that a person is mentally ill and because of that illness there is a substantial risk of serious harm to the person or to others unless the person is immediately restrained; and (2) believes that there is not sufficient time to obtain a warrant before taking the person into custody.") (citing TEX HEALTH & SAFETY CODE § 573.001).

In the absence of any factual allegations to suggest that probable cause existed for police to seize her or that a warrantless seizure was necessary, Ms.

Caballero has alleged a false detention and false arrest claim against the constables in their individual capacity.

As the constables are nondiverse defendants, the undersigned must analyze their joinder under the *Hensgens* factors. For the same reasons explained above, the *Hensgens* factors weigh in favor of granting leave to amend to join the constables.

And so, the Court should grant leave to amend to add them as defendants, after which the Court will no longer have subject-matter jurisdiction under Section 1332(a) and must remand the case to state court.

M. <u>Rosalie Schroeder, Constables Winters and Jamerson, and Kimberly D. Wallace</u>

Ms. Caballero's Motion for Leave to Seek Discovery requests to join Rosalie Schroeder, Constables Winters and Jamerson, and Kimberly D. Wallace, who are not included in the Motion for Leave to Request Joinder of Defendants. *See* Dkt. No. 35; Dkt. No. 45 at 3.

If Ms. Caballero wishes to add these defendants, she must show good cause because her Motion Leave to Seek Discovery was filed after the deadline to file any motion for leave to amend the pleadings or to join parties. The Motion for Leave to Seek Discovery was filed on March 13, 2024, and the deadline to file any motion for leave to join additional parties or for leave to amend or supplement pleadings was December 28, 2023. *See* Dkt. No. 27 at 7-8.

To show good cause under these circumstances, the Court considers four factors: "'(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the

amendment; and (4) the availability of a continuance to cure such prejudice.'" *S&W Enterprises, L.L.C. v. SouthTrust Bank of Alabama, NA*, 315 F.3d 533, 536 (5th Cir. 2003) (citations omitted).

Ms. Caballero has not provided any explanation for her failure to timely amend, and there is potential prejudice to Gateway Mortgage adding additional parties this late in the case. A continuance would not cure the prejudice. As at least three out of the four factors weigh against modifying the scheduling order, the Court will not grant leave to amend at this time.

## Recommendation

The Court should grant in part and deny in part Ms. Caballero's Motion to Amend [Dkt. No. 32] and Motion to Join Defendants [Dkt. No. 35] and deny Ms. Caballero's Motion for Discovery [Dkt. No. 45]. The Court should deny as moot Ms. Caballero's Motion Requesting Status Update on Motion for Leave of Joinder to Add Additional Defendants and Motion Requesting Status Update on Leave Request to Amended Original Complaint [Dkt. No. 43]. Once the Court has granted in part Ms. Caballero's Motion to Amend and joined the non-diverse defendants, the Court should remand the case to state court.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. ' 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific

finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: June 4, 2024

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE